## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | |
| : | Criminal No. 09-265 (RWR) |
| : | |
| **FEBE DURANGO RUEDA** : | |
| a/k/a **FEBE DURANGO,** : | Sentencing Date: March 23, 2010 |
| : | |
| **Defendant.** : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorneys Brigham Cannon and Nicole Sprinzen, Trial Attorneys, United States Department of Justice, Criminal Fraud Section, hereby submits this memorandum in aid of sentencing.  The United States requests that the court adopt the findings of the Presentence Investigation Report ("PSR"), which indicates that the appropriate Sentencing Guidelines range is 46-57 months (total offense level of 23 and a Criminal History Category I).  *See* PSR ¶ 58.  For the reasons set forth below, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment within the Guidelines range and impose restitution in the amount of $1,534,966.  *Id.* ¶ 75.

### BACKGROUND

The Export-Import Bank of the United States ("Ex-Im Bank") is an independent agency of the executive branch of the United States and is located in Washington, D.C. Its mission is to assist in the export of United States goods and services to companies overseas.  One way that the Ex-Im Bank fulfills this mission is to issue loan guarantees to

lending banks on behalf of creditworthy foreign companies. The foreign borrowers then use the funds to purchase U.S. goods. To receive an Ex-Im Bank guarantee, the foreign borrower or its designee must submit to the Ex-Im Bank certain credit information, including financial statements.

The Ex-Im Bank also requires that the lending bank obtain certain documentation to substantiate, among other things: (1) that U.S. goods were actually shipped; and (2) the value of those goods. That documentation could include invoices and shipping documents, like bills of lading. The lending bank then makes a certification that the requirements of the Ex-Im Bank's guarantee were fulfilled when the funds were released to the foreign borrower.

The parties agree that between November 2005 and May 2007, the defendant was the President of Droservicios, Ltda. ("Droservicios"), a Colombian company. *Id.* ¶ 8. During that time period, the defendant entered into a conspiracy to defraud the Export-Import Bank of the United States ("Ex-Im Bank"). *Id.* In the course of that conspiracy, the defendant signed falsified Droservicios financial statements that she knew would be submitted to the Ex-Im Bank to induce the bank to guarantee a loan to Droservicios. *Id.* ¶ 11. With her co-conspirators, she prepared or caused to be prepared false invoices and shipping documents to represent that Droservicios had purchased and received over $1.3 million of U.S. goods. *Id.* ¶¶ 13-16. Instead of actually purchasing the U.S. goods, the defendant agreed that Droservicios would purchase equipment of approximately $400,000 in value, and that she, Droservicios and her co-conspirators would split the remaining loan proceeds. *Id.* ¶ 14. As a result of the conspiracy, the defendant received

$139,064.00 in deposits to her personal bank account, in cash transferred to her, and in deposits to Droservicios's account. *Id.* ¶ 17.

## GUIDELINES CALCULATION

The PSR has properly calculated the Guidelines at a level 23, with a Guidelines sentence of 46-57 months. In the plea agreement, the parties agreed: (1) to a base offense level of 6; (2) to a 16-level increase based on a loss of more than $1,000,000 but less than $2,500,000; and (3) to a 2-level increase based on the defendant's role as an organizer, leader, manager or supervisor. *See* Plea Agreement ¶ 8. The PSR adopted the stipulations from the plea agreement, and also included an additional 2-level increase under U.S.S.G. §2B1.1(b)(9) because a substantial part of the offense occurred outside the United States. While the parties did not stipulate that this offense characteristic applies, the plain language of this enhancement applies to this offense. *See, e.g.*, *United States v. Singh*, 291 F.3d 756, 759-62 (11th Cir. 2002) (rejecting the defendant's attempt to narrow the plain meaning of the enhancement's language).

Under the plea agreement, the defendant is allowed to argue for a departure based on *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), and her status as a Colombian citizen. If the court grants such a departure, the defendant is eligible for a downward departure "of the shorter of 10 percent of the term of imprisonment . . . or 6 months." 18 U.S.C. § 3624(c)(2).

## SECTION 3553(a) SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides several factors that the sentencing court shall consider in sentencing a defendant. These factors are discussed below as they are in Section 3553(a).

3

### (1) The nature and circumstances of the offense and the history and characteristics of the defendant

### (A) Nature and circumstances of the offense

A Guidelines sentence at an offense level of 23 is appropriate and reasonable given the scope, complexity and size of the fraud. The defendant was aware of and a knowing participant beginning at least when she signed the false financials. She knew that the Ex-Im Bank was relying on the false financial information about Droservicios and that the Ex-Im Bank would not have given its guarantee without the inflated numbers. And, after the Ex-Im Bank guaranteed the loan, the defendant was involved in preparing false invoices and shipping documents to ensure that the full loan amount was released by the lending institution, even though only about a third of the loan proceeds was used to buy goods.

This case illustrates how a government program, intended to benefit both the U.S. businesses who sell the goods and the foreign borrowers who would not qualify for a loan without the Ex-Im Bank guarantee, can be exploited. To efficiently and successfully fulfill its mission, the Ex-Im Bank must rely on the participants in its programs to provide truthful information about the transactions in which they engage. That trust, however, also makes the programs vulnerable to fraud and abuse.

The defendant and her co-conspirators took advantage of the Ex-Im Bank's trust. The defendant intentionally made false statements, abusing the trust inherent in the system. And, though the defendant was not the mastermind of this scheme, did not have direct dealings with the Ex-Im Bank, and neither she nor her company reaped most of the ill-gotten proceeds, her actions were critical to a fraud that ultimately cost the government over $1.5 million.

> **(B)   The history and characteristics of the defendant**

The defendant has no criminal history and there is nothing in her personal history to indicate that she has been previously involved in schemes like this one. *See* PSR ¶¶ 38-53.

> **(2)   The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; and (C) to protect the public from further crimes of the defendant**

> **(A)   The seriousness of the offense**

The defendant and her co-conspirators scheme ultimately cost the government over $1.5 million. And the defendant was a knowing and voluntary participant whose actions were critical to the success of that scheme. Further, this is not an instance where the defendant, because he or she could reasonably foresee the loss, is responsible for a loss amount under the Guidelines far greater than the defendant's actual knowledge of the loss. Instead, in this case, the defendant knew that the fraud would cause the Ex-Im Bank to guarantee a loan of over $1.3 million. It was a serious offense that deserves a serious, Guidelines sentence.

> **(B)   Public deterrence**

Not surprisingly, the government has difficulty prosecuting and deterring foreign borrowers who abuse the Ex-Im Bank guarantee programs. As the court is aware from other Ex-Im Bank cases that have come before it, these schemes are more than isolated instances. Foreign fraudsters have discovered that they can take advantage of the Ex-Im Bank's trust and have relatively little to fear because they are outside easy reach of the United States. It is the government's understanding that the defendant is the only foreign borrower to be prosecuted in the United States for defrauding the Ex-Im Bank. Given the

difficulty of deterring the conduct of those abroad, it is important to send a strong message of deterrence in this case.

### (C) Need to deter the defendant

The government recognizes, however, that the significance of the defendant's crime and the need to provide adequate deterrence should be counterbalanced with the defendant's predominately good conduct as a productive member of society and her timely acceptance of responsibility when she was arrested. Indeed the defendant admitted much of her criminal conduct when she met with agents of the Ex-Im Bank who tried to collect on the Droservicios debt.

### (3) The kinds of sentences available

The maximum statutory term of imprisonment at issue here reflects the serious nature of the defendant's crime. Conspiracy to defraud the United States carries a maximum statutory term of 5 years' imprisonment and provides for a term of supervised release of not more than 3 years. The PSR has properly calculated an adjusted Guidelines offense level of 23. That is a Zone D sentence, and the Guidelines state that "the minimum term shall be satisfied by a sentence of imprisonment." U.S.S.G. §5C1.1(f).

The government agrees with the PSR that in this case there exist no circumstances that would justify a downward departure or variance from a Guidelines sentence, except for the possibility of a *Smith* departure. Neither are there circumstances that would justify an upward departure or variance from a Guidelines sentence. A term of imprisonment within the Guidelines range is, therefore, reasonable and appropriate.

**(4)  The need to avoid unwarranted sentencing disparities**

One important function of the Guidelines is to avoid disparity in sentencing across the federal judicial system. While the defendant is the first to be sentenced in this conspiracy, a sentence within the Guidelines avoids unwarranted sentencing disparities with other defendants in fraud cases.

## CONCLUSION

For the foregoing reasons, the government requests that the court adopt the factual findings and Guidelines calculations of the PSR, and, after considering the sentencing factors of § 3553(a), sentence the defendant to a Guidelines sentence of between 46-57 months.

        Respectfully Submitted,

        DENIS J. MCINERNEY
        Chief, Fraud Section
        Criminal Division
        United States Department of Justice

By: _____/s/_____
        Brigham Cannon
        Nicole Sprinzen
        Trial Attorneys
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Avenue, NW
        Washington, D.C. 20005
        (202) 307-0593
        Brigham.Cannon@usdoj.gov

Dated: March 9, 2010